Joseph P. Costa, Esq. (State Bar No. 130131)
Lindsay T. Cinotto, Esq. (State Bar No. 258852)
Yujin Yi, Esq. (State Bar No. 279154)
COSTA, ABRAMS & COATE, LLP
1221 Second Street, Third Floor
Santa Monica, California  90401
Tel: (310) 576-6161
Fax: (310) 576-6160
E-Mail: joseph.costa@costalaw.com

Attorneys for Plaintiff Implus Footcare, LLC

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMPLUS FOOTCARE, LLC, a Delaware limited liability company,<br><br>        Plaintiff,<br><br>    v.<br><br>ONTEL PRODUCTS CORPORATION, a New Jersey corporation,<br><br>        Defendant. | Case No.:<br><br>Assigned to<br><br>**COMPLAINT FOR:**<br><br>(1) Copyright Infringement;<br>(2) Trade Dress Infringement;<br>(3) State Unfair Competition; and<br>(4) Unfair Business Practices Under Business And Profession Code §17200.<br><br>**DEMAND FOR JURY TRIAL**<br><br>  Complaint Filed: |

Plaintiff Implus Footcare, LLC ("Implus" or "Plaintiff"), complains and alleges against Defendant Ontel Products Corporation ("Ontel" or "Defendant") as follows:

## **JURISDICTION AND VENUE**

1.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331.  This is an action for copyright infringement arising under the Copyright Act of 1976, 17 U.S.C. §§ 101, et seq.  Supplemental jurisdiction of the related claims is proper pursuant to 28 U.S.C. §1367.

2.      Further, personal jurisdiction is proper over Defendant because it markets products and services to customers and prospective customers in this District and State and Plaintiff is informed and believes and alleges thereon that at all relevant times herein, Defendant performed services, sold its products and/or otherwise transacted business in this District and State.

3.      Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391(b)(2).  Defendant transacts business in the Central District of California and the acts alleged herein took place, in part, in the Central District of California.

## **THE PARTIES**

4.      Plaintiff is a Delaware limited liability company, with its corporate office located in North Carolina.  Plaintiff, a company that previously focused on footwear and outdoor gear, acquired Perfect Fitness, LLC, in 2011.  Perfect Fitness (formerly known as PT Metrics, LLC, and Bodyrev, LLC) was a successful, fully-integrated direct response California company that developed, manufactured, and

marketed a growing line of fitness products for U.S. and international customers, including but not limited to, the "Perfect Pushup" and the "Perfect Pullup." The products were very successful direct response products and collectively involved millions of dollars of marketing expense for the advertising campaigns behind these products. Having added Perfect Fitness as a division of Plaintiff, Plaintiff developed, manufactured, and marketed the "Ab Carver" and the "Ab Carver Pro".

5.     Plaintiff is informed and believes and thereon alleges that Defendant Ontel Products Corporation is a New Jersey corporation, with its principal place of business in Fairfield, New Jersey.  Defendant's president is Ashok Khubani, who, along with various family members (upon information and belief), owns and/or controls numerous Internet and direct response marketing companies. Defendant primarily markets and/or manufactures various house-wares, such as "Swivel Sweeper" mops and "Dryer Balls," as well as home fitness products including, but not limited to, "Pushup Pro," "Iron Gym," and "Speed Abs."

## GENERAL ALLEGATIONS

6.     Since Defendant's entry into the home fitness market, it has engaged in a pattern of business practices that infringe upon Plaintiff's rights. As explained more fully below, Plaintiff is informed and believes that Defendant's business strategy is to create inferior, "copy-cat" products based on Plaintiff's products and then attempt to advertise its inferior product in a manner designed to confuse the

consumer (while simultaneously taking advantage of Plaintiff's substantial marketing efforts and expenditures).

**Plaintiff's Original "Perfect Pushup" and Defendant's "Pushup Pro"**

7.      In or around 1996, Alden Mills (one of Perfect Fitness's founders) conceived of the "Perfect Pushup" idea while serving as a platoon commander with the United States Navy SEALs.  This idea included a better way to perform pushups by using a device that had rotating handles which would aid in performing a proper pushup.

8.      In or around October 2006, the "Perfect Pushup" began a print campaign.  In or around January 2007, the "Perfect Pushup" began a large scale national advertising campaign in the direct response market (*i.e.* through the use of televised infomercials ("spots") and other means of direct marketing to consumers). Plaintiff is the owner and holder of all rights regarding "Perfect Pushup."   Plaintiff used the phrase "Get Ripped" in conjunction with the advertising of its fitness products.

9.      The "Perfect Pushup" became one of the most successful fitness products in the direct response market.   Plaintiff spent millions of dollars marketing the "Perfect Pushup" and building it as a brand in the minds of purchasing consumers.

COMPLAINT

10.     Defendant Ontel Products Corporation, with actual notice of Plaintiff's development and ownership of "Perfect Pushup," introduced its own product in or around July 2007, the "Pushup Pro," which was a direct competitor of "Perfect Pushup."

11.     Defendant was previously a company in the house-wares business, but shortly after Perfect Fitness's "Perfect Pushup" became successful, Defendant began to engage in the sale of a nearly identical-looking, yet much cheaper and inferior product, with a nearly identical iteration in the name – "Pushup Pro" rather than "Perfect Pushup."

12.     Plaintiff is informed and believes that Defendant deliberately named its product "Pushup Pro" (rather than "Perfect Pushup") and used a similar packaging and design so as to create a likelihood of confusion between the highly successful "Perfect Pushup" and Defendant's inferior "Pushup Pro."

13.     Defendant's packaging of its original "Pushup Pro" product further evidenced Defendant's intent to confuse the marketplace about its inferior product. For instance, Defendant's "Pushup Pro" box copied Plaintiff's packaging -- Defendant's box contained similar photographs, drawings, and phrases. Furthermore, Defendant's subsequent infomercial also copied many distinct elements and the overall "look and feel" of Perfect Fitness's infomercial, including

but not limited to the "exploding muscles" technique (that highlighted the muscles being worked).

14.     On July 25, 2007, Plaintiff filed a lawsuit against Defendant Ontel Products Corporation asserting claims for trademark infringement and trade dress infringement relating to Defendant's "Pushup Pro" product.  This action was filed in the United States District Court, Central District of California, Case No. CV07-04808.

15.     In December 2007, the parties entered into a settlement agreement, which contains a confidentiality provision.

**Plaintiff's "Perfect Pushup" (Travel Unit), Plaintiff's "Perfect Pushup" (Basic Unit), and Defendant's "Pushup Pro" (Express Unit)**

16.     After the execution of the settlement agreement, Plaintiff began to manufacture, advertise, and sell a travel edition of the "Perfect Pushup" (the "travel unit") as well as a smaller streamlined unit of the "Perfect Pushup" (the "basic unit") nationally to consumers.

17.     Seeing yet another opportunity to create confusion in the marketplace and to wrongfully usurp the goodwill created by Plaintiff's extensive marketing efforts, Defendant decided to follow in the shadows of Plaintiff's advertising and created a product based on Plaintiff's "Perfect Pushup" (travel unit) and the "Perfect Pushup" (basic unit).  Defendant called its product "Pushup Pro" (express

COMPLAINT

unit).  For instance, Plaintiff's "Perfect Pushup" (basic unit) has handles that snap into place, just like Defendant's "Pushup Pro" (express unit).

18.    Subsequently, Defendant breached the settlement agreement and as a result, Plaintiff filed a second action in the Central District, which also resulted in a settlement of claims.

**Plaintiff's "Perfect Pullup" and Defendant's "Iron Gym"**

19.    Plaintiff also manufactured, advertised, and sold a home gym product called the "Perfect Pullup," which is an exercise device and program that aids a user in performing a pull-up using the proper form.  It is also used for a variety of other exercises.

20.    In early 2008, Plaintiff began a large marketing campaign for "Perfect Pullup."  This product, like its predecessors, quickly ascended on the monitoring charts to become a highly successful product.

21.    The television campaign for "Perfect Pullup" featured a one and two minute spot, with a standing and isolated doorframe (a "floating doorframe").  This unique creation of a floating doorframe allowed the camera angle to photograph the actor performing the exercises in a 360-degree manner.  The spot also featured "exploding muscles" that highlight the muscles which are being exercised by this product.  The spot ended by featuring a unique extra "ab strap" apparatus and had the actor performing exercise functions on that as well.

22.     Continuing its pattern of making cheap, copy-cats of Plaintiff's exercise products and tracking Plaintiff's advertising, in or around August 2008, Defendant launched an advertising campaign for its new pull-up exercise product entitled "Iron Gym."

23.     As part of its advertising campaign, Defendant was involved in the production of an infomercial for "Iron Gym."   Defendant again deliberately attempted to copy Plaintiff's marketing, using features and techniques including, but not limited to, a "floating doorframe," "exploding muscles" to highlight and isolate muscles, the mark/slogan "Get Ripped!," and the use of ab straps.   The overall look and feel of Defendant's advertising was substantially similar to Plaintiff's advertising.  As a result of this, Plaintiff filed a third action against these defendants, as in the Central District of California which likewise resulted in a settlement.

**Plaintiff's "Ab Carver Pro"**

24.     On or about May 2012, Plaintiff began manufacturing, advertising, and selling a home gym product called the "Ab Carver" and the "Ab Carver Pro," which are "ab wheel" or "ab roller" exercise devices and programs that are designed to effectively work out a user's "core," or abdominal muscles, obliques, shoulders, chest, and arms.  The "Ab Carver Pro" includes several novel features which distinguishes it from other ab wheels in the market including, but not limited

1    to, a carbon steel spring inside the wheel which "turbo-charges" abdominal and

2    arm workouts; an "ultra-wide" wheel which allows the user to roll to the right, left,

3    and center and to use it on different surfaces; and ergonomic hand grips to increase

4    control and ease of use.

5        25.    The "Ab Carver Pro" is packaged in a black box with red, white, and

6    gray text and graphics.  On the front panel, a male shirtless model is shown using

7    the "Ab Carver Pro" diagonally from the left.   Over the male model's right

8    shoulder is a picture of the "Ab Carver Pro."  The product is partially "cut" in half

9    lengthwise, exposing the internal spring within the wheel, one of the unique

10   features of the "Ab Carver Pro."  The spring, as well as other unique features of the

11   "Ab Carver Pro," are listed and briefly described next to picture.  The "Ab Carver

12   Pro" appears to have a white glow, which draws more visual attention to it against

13   the black background.

14       26.    On the back panel, a male and a female model are pictured on the left

15   half.  There is white, red, and grey text above the heads of the models.  The male

16   model is shirtless, and the female model is wearing a cropped, sports top and her

17   blond hair is tied back in a ponytail. The models are shown standing next to each

18   other, but at slight angles toward the camera, with their hands on their hips, and lit

19   in a way as to highlight their abdominal muscles.  On the right half of the back

20   panel are four pictures and descriptions of the unique features of the "Ab Carver

COMPLAINT

Pro": the internal spring, the ergonomic grips, the wide rubber wheel tread, and foam kneepads.

27.    In or about 2012, Plaintiff began a large marketing campaign for the "Ab Carver Pro."  Plaintiff, to date, has invested and spent hundreds of thousands of dollars in developing and marketing the "Ab Carver Pro."  This product, like its predecessors, quickly ascended on the monitoring charts to become a highly successful product.

28.    The television campaign for the "Ab Carver Pro" features a one minute spot (also called an infomercial) starring a male and female model demonstrating the uses and benefits of the "Ab Carver Pro."  With hard rock background music and a narrator using a "drill sergeant"-like tone of voice, the spot highlights the many distinctive features of the "Ab Carver Pro."

29.    The spot includes several unique filming techniques, such as an upward camera angle through a transparent surface on which the models demonstrate using the "Ab Carver Pro."  This technique allows the camera to capture the models' torsos as they use the product and provides the viewer the ability to view the models using the "Ab Carver Pro" as if the models are floating overhead.

30.    The spot highlights the multi-directionality of the "Ab Carver Pro" using additional unique techniques.  Three images of the male model using the "Ab

Carver Pro" straight, to the right, and to the left were overlayed on top of each other. This composite shot emphasizes the multi-directionality of the "Ab Carver Pro." In addition, the different muscle groups that are exercised when the "Ab Carver Pro" is used in the three different directions are highlighted on the models' bodies using the "exploding muscles" technique and in text.

31.     In addition, the spot shows that the special design of the "Ab Carver Pro's" wheel permits the user to use it on many surfaces. As the model uses the product, the narrator states, "It works on hard floors and carpets" as the text, "Works on HARD FLOORS & Carpets" appears on the screen.

32.     The spot also highlights the carbon spring feature of the "Ab Carver Pro" through animation overlayed on the image of the wheel. A photograph of the wheel is "cut away" to animation and graphics of the spring within the wheel. As the wheel is rolled away, the direction of the wheel and the increased tension and resistance created by the wheel's internal spring being coiled up is highlighted in red text, arrows, and animation. As the wheel is rolled back, the direction of the wheel and the decreased tension and increased assistance created by the wheel's internal spring being uncoiled is highlighted in green text, arrows, and animation.

33.     The spot for the "Ab Carver Pro" was duly registered with the United States Copyright Office. Attached hereto as **Exhibit "A"** is a copy of the U.S. Copyright Registration regarding the "Ab Carver Pro" infomercial. Although

COMPLAINT

originally registered as an affiliate of Plaintiff, that Company assigned its rights of the copyright registration to the Plaintiff.

### Defendant's "Speed Abs"

34.     Continuing its pattern of creating cheap, copy-cat products and tracking Plaintiff's advertising, in or around 2014, Defendant launched an advertising campaign for its new home gym product entitled "Speed Abs." It, like the "Ab Carver Pro," is an ab wheel apparatus that features an internal spring, extra wide wheel, and "ergonomic" handles.

35.     Plaintiff is informed and believes, and alleges there on, that Defendant had actual notice of Plaintiff's development and ownership of the "Ab Carver Pro" and Plaintiff's advertising campaign, including its infomercial, when it developed and launched its campaign for "Speed Abs."

36.     As part of its advertising campaign, Defendant was involved in the production of an infomercial for "Speed Abs." Once again, Defendant has deliberately attempted to copy Plaintiff's marketing with the end result being a commercial that is both intrinsically and extrinsically similar to protectable elements in Plaintiff's commercial. Specifically, the overall look and feel of Defendant's advertising is substantially similar to Plaintiff's advertising. These similarities include, *inter alia*: the following:

COMPLAINT

(a)    both commercials utilize a shirtless male model demonstrating the product;

(b)    both commercials utilize a blond female model, dressed in a red, cropped exercise top and short black shorts, with her hair tied back in a ponytail, demonstrating the product;

(c)    both commercials film the models using the product from an upward camera angle through a transparent surface, such that the viewer can see the models' torsos as they use the product;

(d)    both commercials highlight the multi-directionality of the products by using a composite shot made of three images of the male model using the product straight, to the left, and to the right overlayed on top of each other;

(e)    both commercials use "exploding muscles" to highlight the different muscles that are exercised by the product on the model as the model uses the product in the three different directions;

(f)    both commercials show that the product can be used on many surfaces with text and narration using the words "hard floors" and "carpet" or "carpets";

(g)    both commercials use the technique of going from a photograph of the wheel to a graphic cutaway to reveal the spring inside of the wheel;

(h)    both commercials use green animation and text to highlight the direction of the wheel and the internal spring being coiled up as the product is

COMPLAINT

rolled away, and both commercials use red animation and text to highlight the direction of the wheel and the internal spring uncoiling as the product is rolled back;

(i)     both commercials' announcers describe the grips or handles of the product as being "ergonomic" over a shot of the male model using the product in similar shots;

(j)     both commercials utilize hard rock music as background music;

(k)     the color palettes of the two commercials are the same, consisting of red, black, grey, and white;

(l)     both commercials begin with nearly identical opening scenes of a shirtless male model's torso in front of a black background, framed such that the models' head and lower half are cropped out of the shot;

(m)     both commercials have nearly identical second scenes of a female model, wearing a cropped red athletic top, with her hands on her hips, in front of a black background, positioned and framed such that her head and lower half are also cropped out of the shot;

(n)     both commercials utilize a male narrator using a "drill sergeant"-like tone of voice; and

(o)     much of the language in Defendant's voice-over is substantially similar to Plaintiff's narration.

37.   There are many other ways to advertise exercise equipment and ab wheels, as evidenced by the advertising by Plaintiff's other competitors.

38.   Plaintiff is informed and believes, and alleges thereon, that Defendant used a similar packaging and design so as to create a likelihood of confusion between the highly successful "Ab Carver Pro" and Defendant's inferior "Speed Abs."

39.   Defendant's packaging of "Speed Abs" further evidences Defendant's intent to confuse the marketplace about its inferior product.   For instance, Defendant's "Pushup Pro" box copied Plaintiff's packaging -- Defendant's box contained similar photographs, drawings, and phrases.   These similarities include, *inter alia*: the following:

(a)   both packages feature a picture of a shirtless male model using the product on the front panel diagonally from the left;

(b)   over the left shoulder of the male model on the front panel of the package, both packages feature a picture of the product, highlighted in white to draw visual attention against the black background, cut lengthwise to show the internal spring within the wheel;

(c)   both packages include similar phrases, including, *inter alia*, the phrase "RIPPED ABS" shown toward the top of the front panel of the package;

(d)    the back panel of both packages feature a photo of a male and female model, standing next to each other at slight angles, with their hands on their hips, dressed and lit to show off their abdominal muscles;

(e)    the male and female models that appear on both packages look and are dressed similarly.   The male models are clean-cut, shirtless, and are wearing athletic shorts.   The female models are both blond, have their hair tied back in a ponytail, and are wearing cropped, athletic tops and tight, form-fitting shorts;

(f)    both packages highlight and describe four features of the products on the back panel, including the internal spring, comfortable grips, and a wide tread;

(1)    the "Ab Carver Pro" package describes the product's internal spring: "Carbon steel spring powers the Kinetic Engine for resistance or assistance when you need it" and the "Speed Abs" package describes the product's internal spring: "STEEL-COIL RESISTANCE Resistance Going Forward! Assistance Coming Back!";

(2)    the "Ab Carver Pro" packages describes the product's grips: "Performance grips are ergonomically designed for precision and stability control" and the "Speed Abs" package describes the products grips: "RUBBERIZED, PRO-GRIP HANDLES Maximize Comfort & Control While Reducing Hand Fatigue!"; and

(3)    the "Ab Carver Pro" package describes the product's wide tread: "Ultra-wide rubber tread for maximum stability when carving left, right, and center" and the "Speed Abs" package describes the product's wide tread: "WIDE, NON-SKID TREAD Won't Slip or Slide – Stable Movement In Any Direction!"; and

(g)    the color palettes of the two packages are the same, consisting primarily of red, grey, and white text and graphics over a black background.

## FIRST CLAIM FOR RELIEF

### (Copyright Infringement)

40.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 39 of this Complaint and reiterates the same, as though fully set forth herein.

41.    Plaintiff owns the federal copyrights in and to advertisements for "Ab Carver Pro." A true and correct copy of Plaintiff's United States Copyright Office Certificate of Registration is attached hereto and incorporated herein as **Exhibit "A"** (U.S. Copyright Registration No. PA 1-912-771; Assigned to Plaintiff on November 10, 2014).

42.    Plaintiff's work is wholly original and constitutes copyrightable subject matter under the Copyright Act of 1976.  Plaintiff complied in all respects with the copyright laws to secure the exclusive rights and privileges in the copyrights in its work, including, but not limited to, the rights relating to reproduction, adaptation, distribution, public display, public performance, or derivative works.

43.    Plaintiff is informed and believes, and thereon alleges, that after Plaintiff introduced the "Ab Carver Pro" into the marketplace and began advertising this product, Defendant developed its own home gym and ab wheel product called the "Speed Abs."  To this end, Defendant produced a television spot for the "Speed Abs" that is substantially similar to Plaintiff's television commercial.

44.    Plaintiff is informed and believes, and thereon alleges, that Defendant directly copied protected expression from Plaintiff's "Ab Carver Pro" infomercial without authorization.   Defendant's "Speed Abs" commercial copies numerous extrinsic and intrinsic elements from Plaintiff's "Ab Carver Pro" commercial, as set forth above.  The overall look and feel of the two commercials is substantially similar.

45.    By its conduct as alleged herein, Defendant infringed on, and continues to infringe upon, Plaintiff's exclusive rights to reproduce its work, to

prepare derivative works based upon them, to distribute copies of them to the public, and to display them to the general public.

46.    Plaintiff is further informed and believes that Defendant's act of infringement was willful, intentional, and with disregard of and with indifference to the rights of Plaintiff.

47.    As a direct and proximate result of Defendant's repeated infringements of Plaintiff's reproduction, distribution, public display, public performance, or derivative work rights, Plaintiff sustained and continues to sustain substantial damages in an amount presently unknown but which will be established at trial according to proof.

48.    Defendant's infringements are continuing and threaten to irreparably harm Plaintiff's copyright interests, as well as its good name and good will. Accordingly, Plaintiff is entitled to an injunction barring Defendant, its agents, employees, and representatives from: (i) displaying its "Speed Abs" infomercial; and (ii) profiting from any sales or distribution of "Speed Abs" which derives from the infomercial.

49.    Plaintiff has no adequate remedy at law to redress Defendant's continuing wrongful conduct.

50.    As a direct result of Defendant's wrongful infringing conduct, Plaintiff is also entitled to statutory copyright damages, or if Plaintiff so elects,

Plaintiff's actual damages, Defendant's profits, and Plaintiff's attorney's fees according to proof at trial.

## SECOND CLAIM FOR RELIEF

### (Trade Dress Infringement)

51.  Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 50 of this Complaint and incorporates each herein by reference.

52.  The trade dress of Plaintiff's "Ab Carver Pro" is distinctive and non-functional.   Due to Plaintiff's extensive advertising and promotion efforts Plaintiff's trade dress has also developed a secondary meaning with consumers, and it serves to distinguish Plaintiff's goods from the goods of others.

53.  Plaintiff is informed and believes, and thereon alleges, that Defendant's "Speed Abs" copied the packaging concept of Plaintiff's "Ab Carver Pro."  The placement and types of photographs and drawings used are similar, as described above.  For instance, the packages contain, on the front panel, a similar looking, similarly dressed man, in a similar position, using the product.  Over the right shoulder of the man pictured on the front panel is a similar diagram of the product, which shows the internal spring within the wheel of the products.  The diagram of the product is highlighted in white so that it appears to be glowing, which draws more attention against the black background.  The ratio and size of

the photographs and the exercise products are similar.  The wording on the boxes is also similar and uses the same or similar key words.  The color scheme is also similar, with both boxes containing color schemes of red, white, and grey against a black background.

54.    Due to the similarities between the trade dress of Plaintiff and Defendant's products, Plaintiff's "Ab Carver Pro" is likely to be confused with Defendant's "Speed Abs" by members of the consuming public.

55.    As a proximate result of the advantage accruing to Defendant's business from Plaintiff's nationwide advertising, sales, and consumer recognition, and as a proximate result of confusion, deception, or mistake caused by Defendant's wrongful advertising and sale of its goods, as alleged above bearing substantial similarities to Plaintiff's trade dress, Plaintiff has been deprived of and will in the future be deprived of substantial sales of its product and has been deprived of the value of its mark as a commercial asset in amounts to be determined at trial.

56.    Plaintiff is informed and believes, and thereon alleges, that unless restrained by this Court, Defendant will continue to infringe Plaintiff's trade dress and mark, thus engendering a multiplicity of judicial proceedings, and pecuniary compensation will not afford Plaintiff adequate relief for the damage to its mark in the public perception.

COMPLAINT

57.    The acts of Defendant are believed to be willful and accordingly, Plaintiff is entitled to receive treble damages as a result of Defendant's actions. Similarly, this is an exceptional case, warranting an award of attorneys' fees to Plaintiff is an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF

### (State Common Law Unfair Competition)

58.    Plaintiff repeats and re-alleges the allegations contained in paragraphs l through 57 of this Complaint and reiterates the same, as though fully set forth herein.

59.    The acts and conduct of Defendant as alleged above constitute unfair competition pursuant to the common law of the State of California.

60.    This wrongful conduct is injuring Plaintiff and is diverting from Plaintiff to Defendant's, customers who would otherwise buy Plaintiff's products. As a result, Defendant's wrongful conduct has caused direct and proximate damage to Plaintiff.

61.    Plaintiff is further informed and believes that Defendant's wrongful conduct was willful, intentional, and with disregard of and with indifference to Plaintiff's rights.

62.    Defendant's conduct as alleged above has damaged and will continue to damage Plaintiff's goodwill and reputation and has resulted in losses to Plaintiff

COMPLAINT

1  and an illicit gain of profit to Defendant in an amount which is unknown at the

2  present time.

### FOURTH CLAIM FOR RELIEF

**(Unfair Business Practices – Cal. Bus. and &Prof. § 17200)**

63.    Plaintiff repeats and re-alleges the allegations contained in paragraphs l through 62 of this Complaint and reiterates the same, as though fully set forth herein.

64.     Plaintiff brings this action on its own behalf and on behalf of all persons and companies similarly situated.  The class that Plaintiff represents is composed of all persons or companies who, at any time since the date four years before the filing of this action have had their products and/or the marketing of those products usurped by Defendant.  The persons in this class are believed to be so numerous that the joinder of all such persons is impracticable and that the disposition of their claims in a class action is a benefit to the parties and to the Court.

65.     There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented in that each member of the class is or has been in the same factual circumstances, hereinafter alleged, as Plaintiff.  Proof of a common or single state of facts will establish the right of each

member of the class to recover.  The claims of Plaintiff are typical of those of the class and Plaintiff will fairly and adequately represent the interests of the class.

66.    Plaintiff has invested time, money and effort into developing and establishing the "Ab Carver Pro."

67.    By selling a nearly  identical product, as Defendant has a practice and  history of doing, Defendant has designed a method to pass-off its goods as the goods of Plaintiff, including but not limited to Defendant's "Speed Abs."  Such actions have caused a likelihood of confusion in the eyes of the would-be purchasers of the products.

68.    Defendant's acts constitute a false representation and designation of origin in connection with the advertising and sale of goods or services and is an unfair business practice pursuant to California's Business and Professions Code § 17200 *et seq*.  Specifically, Defendant is using deceptive, misleading, and confusingly similar advertising for its products to identify goods in competition with Plaintiff's goods in the same trade area in which Plaintiff has already established its mark.

69.    As a direct, proximate, and foreseeable result of Defendant's wrongful conduct, as alleged above, Plaintiff's goodwill and reputation and that of the other members of the plaintiff class, who are unknown to Plaintiff, have been damaged and will continue to be damaged, resulting in losses to Plaintiff and an

COMPLAINT

illicit gain of profit to Defendant in an amount which is unknown at the present time. Consumers are entitled to relief, including full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendant as a result of such unfair business acts or practices.

70.      Despite receiving notice from Plaintiff of these unfair practices, Defendant has refused, and continues to refuse, to cease such actions.

71.      Defendant's acts hereinabove alleged are acts of unfair competition within the meaning of California's Business and Professions Code § 17200 *et seq*. Plaintiff is informed and believes that Defendant will continue to do those acts unless the Court Orders Defendant to cease and desist.

72.      Plaintiff has incurred and, during the pendency of this action, will incur expenses for attorney's fees and costs. Such attorney's fees and costs are necessary for the prosecution of this action and will result in a benefit to each of the members of the class.

73.      Accordingly, Plaintiff is entitled to an injunction barring Defendant, its agents, employees, and representative from: (i) displaying its "Speed Abs" infomercial; and (ii) profiting from any sales or distribution of "Speed Abs" deriving from the infomercial. In addition, restitution should be awarded and

Defendant should be compelled to return the amounts it received from its unfair business practices.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court to enter its judgment against Defendant as follows:

(1)   That Plaintiff be awarded damages for all of Defendant's profits derived from its infringement of Plaintiff's marks;

(2)   The issuance of an injunction barring Defendant, its agents, employees, and/or representatives from: (i) displaying its "Speed Abs" infomercial; (ii) profiting from any sales or distribution of "Speed Abs" deriving from the "Speed Abs" infomercial; and (iii) further distributing selling, causing or authorizing sales and distribution of "Speed Abs";

(3)   That Plaintiff be awarded damages for the injuries to Plaintiff in an amount up to three times the actual damage and/or profits of the Defendant, together with attorney's fees, disbursement and costs of this action pursuant to 15 U.S.C. §1117;

(4)   For statutory copyright damages, or alternatively, if Plaintiff so elects, Plaintiff's actual damages and Defendant's profits according to proof;

1      (5)    For allowable punitive damages;

2      (6)    That Defendant account for all profits and revenues generated by the

3             distribution, selling, causing or authorizing sales and distribution of

4             their infringing "Speed Abs" product;

5      (7)    For consumer and/or class restitution;

6      (8)    For allowable attorneys' fees; and

7      (9)    For all other and further relief as the Court may deem just and proper.

8

9                          Respectfully submitted,

10  Dated:  November 10, 2014    COSTA ABRAMS & COATE LLP

11                         By:

12                              /s/ Joseph P. Costa
                             _____

13                              Joseph P. Costa
                             Lindsay T. Cinotto
                             Yujin Yi

14                              Attorneys for Plaintiff
                             Implus Footware, LLC

15

16

17

18

19

20

COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Dated:  November 10, 2014        COSTA ABRAMS & COATE LLP

                                 By:    /s/ Joseph P. Costa
                                        _____
                                        Joseph P. Costa
                                        Lindsay T. Cinotto
                                        Yujin Yi
                                        Attorneys for Plaintiff
                                        Implus Footware, LLC

COMPLAINT